IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESTER R. SHINAULT,

        Plaintiff,

v.

3:11-CV-436-PK

FINDINGS AND
RECOMMENDATION

DICK HAWKS, TAMI DOHRMAN,
MARTHA MCDANIEL, OREGON
DEPARTMENT OF CORRECTIONS,
et al.

        Defendants.

PAPAK, Magistrate Judge:

    Incarcerated plaintiff Lester R. Shinault filed this action *pro se* against Dick Hawks, Tami Dohrman, Martha McDaniel, and the General Services Division of the Oregon Department of Corrections on April 6, 2011. In his complaint, Shinault alleges defendants' liability under 42 U.S.C. §§ 1983, 1985, and 1986 for the violation of Young's civil rights arising under the First,

Page 1 - FINDINGS AND RECOMMENDATION

Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. This court has federal question jurisdiction over Shinault's federal claims pursuant to 28 U.S.C. § 1331.

Now before the court is the defendants' motion (#27) for summary judgment. I have considered the motion and all of the pleadings on file. For the reasons set forth below, defendants' motion should be granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

Shinault is, and at all material times was, incarcerated with the Oregon Department of Corrections ("ODOC"). He was incarcerated with ODOC from May 19, 2005 until February 5,

Page 2 - FINDINGS AND RECOMMENDATION

2007, and from October 23, 2008 until August 14, 2009, as a result of felony convictions. He was arrested on October 10, 2009 on parole violations, released from jail on October 19, and re-arrested on October 21. He remains incarcerated at the Marion County Jail.

The Oregon Department of Corrections Central Trust Accounting Unit establishes a single trust account for each inmate in ODOC custody. *See* O.A.R. 291-158-0015(1). Funds in such an account are generally held for the benefit of the inmate for which the account was established. ODOC is permitted to access funds held in an inmate trust account only under specifically prescribed circumstances: "for sanctions resulting from the inmate's disciplinary hearings; garnishment actions determined by the courts; court-ordered costs and fees in judicial review proceedings, in habeas corpus and post-conviction cases, in tort actions against a public body, or in other proceedings as authorized or requirement by law; damages or destruction caused by willful misconduct; costs associated with the facility, release, and programs; copies; postage; medically required services including prostheses or other devices; authorized self-elected activities; or to correct illegal and erroneous transactions." *See* O.A.R. 291-158-0015(1). Accordingly, an incarcerated person and the personal estate of that person is liable for the full cost of care while incarcerated. *See* O.R.S. § 179.620(1). ODOC determines an inmate's cost-of-care rates, which includes the cost of room and board, medical care, and other necessities provided by the institution. *See* O.R.S. § 179.701.

The maximum amount a person is required to pay toward the full cost of care is determined according to the person's ability to pay. *See* O.R.S. § 179.620(2). In determining the ability to pay, ODOC considers assets other than those received by or owing to the person and the personal estate of that person, as compensation from the state for injury or death. *See* ORS §

Page 3 - FINDINGS AND RECOMMENDATION

179.640(2)(a). To pay for the cost of care while incarcerated, ODOC may deduct funds from an inmate trust account in advance for an inmate with determinate sentences. *See* O.A.R. 291-203-0040(1). However, if ODOC determines that collection of the amount payable for the inmate's cost of care would be detrimental to the best interests of that person or the agency, then the agency may waive the collection of part or all of the amount otherwise payable. *See* O.R.S. § 179.731. Shinault's claim for relief, alleging defendants' violation of his constitutional right to meaningful access to the courts, is premised in part on Shinault's allegations that the defendants improperly withdrew funds from his inmate trust account, for the purpose of paying for Shinault's cost of care while he was incarcerated from May 29, 2005 until February 5, 2007, and from October 23, 2008 to August 14, 2009.

On April 3, 2009, prior to ODOC's withdrawal from Shinault's trust account, Shinault received $107,416.48 as proceeds from civil litigation against a drug manufacturing company, all of which ODOC deposited into Shinault's inmate trust account. On May 18, 2009, ODOC deducted $21,717.00 from Shinault's inmate trust account to satisfy a garnishment from the Multnomah County Circuit Court for back child support, leaving $85,699.48 in the account. On May 29, 2009, ODOC issued its Ability to Pay Order and Determination of Charges. In that order, ODOC provided Shinault with a statement containing ODOC's calculations of Shinault's assets and cost of care while incarcerated, as well as a Notice of Right to Hearing on Ability to Pay Order. ODOC calculated Shinault's cost of care to be $65,353.94.[1] On June 2, 2009,

---

[1] From July 1, 2005 through June 30, 2007, the average cost of care for an inmate was $67.53 per day. From July 1, 2007 through June 30, 2009, the average cost of care of an inmate was $77.78 per day. Since Shinault was incarcerated for 628 days between May 19, 2005 and February 5, 2007, and for 295 days between October 23, 2008 and August 14, 2009, his total cost of care while incarcerated was $65,353.94.

Page 4 - FINDINGS AND RECOMMENDATION

Shinault submitted his request for a contested hearing before an Administrative Law Judge ("ALJ").

At the time of issuing the Ability to Pay Order, ODOC had adopted a schedule to estimate funds an inmate will need to cover living expenses for the first three months after release from incarceration.[2] See O.A.R. 291-203-0050(6). This schedule is based on estimates of costs for a one bedroom apartment in Salem, Oregon, and is applied statewide in Oregon. In June 2009, ODOC withdrew $4,404 from Shinault's trust account to cover Shinault's living expenses for the first three months after release from incarceration. ODOC then adjusted that amount upward to $5,000 to allow for variable expenses, such as security deposits for housing and for variations of living expenses in other parts of Oregon. ODOC also allowed Shinault to keep $30 a month for the last three months of his incarceration for personal expenses for basic hygiene, snacks, and personal items. After deducting $5,000 for post-release living expenses and $90 for three months of personal expenses while incarcerated, Shinault had $80,609.48 left in his account.

In July 2009, ODOC deducted $4,088.96 from Shinault's inmate trust account as a result of three garnishments served on his inmate account for restitution and related court costs on his prior criminal cases. Also, at Shinault's request, ODOC released approximately $11,000 to Shinault's attorney. At the time of his release from incarceration on August 14, 2009, Shinault had $61,352.39 left in his account.[3] After his release, Shinault was arrested on October 10, 2009

---

[2] As of December 1, 2009, ODOC has adopted a schedule to estimate funds an inmate will need to cover living expenses for the first six months after release from incarceration.

[3] The parties agree that Shinault had $61,352.39 remaining in his inmate trust account on August 14, 2009. However, documentary evidence submitted by Dick Hawks as part of his declaration to the court, including Shinault's inmate trust account statements between January and July 2009, show that ODOC withdrew $65,353.94 from the account on June 2, 2009 to pay

Page 5 - FINDINGS AND RECOMMENDATION

on parole violations, released from jail on October 19, and re-arrested on October 21.

On October 23, 2009, Shinault remained in jail during a contested hearing on the Ability to Pay Order before the ALJ. Shinault had retained an attorney to represent him; however, the attorney withdrew prior to the hearing. At the hearing, defendants Dick Hawks and Martha McDaniel presented evidence to support ODOC's calculations for Shinault's cost of care. Shinault asserted that ODOC would be "murdering" him if he was not given the money remaining in his account to pay for diabetes medications. Shinault also requested that ODOC waive the cost of his incarceration; however, he did not provide any evidence to ODOC prior to his release or at the administrative hearing as to any specific medical needs or the projected cost of those needs. The ALJ found that since Shinault was still in jail as of the date of the hearing, his medications and medical costs would be paid for by the institution holding him.

The ALJ also found that Shinault presented no evidence that he could not work when he was not incarcerated. Therefore, Shinault's medical costs and medications may be covered by medical insurance through his employment. Since Shinault had been on the Oregon Health Plan as recently as 2007, that plan remained an option for him if his medication costs were not covered through work or another third-party provider. On December 29, 2009, the ALJ issued a Second Amended Proposed Order, finding that Shinault had the ability to pay for the cost of his care while incarcerated, and ordered him to pay $61,352.39.

## ANALYSIS

Having reviewed and analyzed Shinault's complaint, it appears that Shinault intends to

---

for the cost of care of Shinault's incarceration. Account statements show that Shinault had $9,639.01 remaining in his account on July 20, 2009, and do not show any balances beyond this date.

Page 6 - FINDINGS AND RECOMMENDATION

state the following three claims for relief under 42 U.S.C. § 1983, and one claim for relief under 42 U.S.C. §§ 1985 and 1986. First, Shinault alleges that defendants are liable under Section 1983 for the violation of Shinault's rights under the First and/or Fourteenth Amendment in connection with defendants' alleged actions in improperly withdrawing money from Shinault's inmate trust account to pay for his cost of care while incarcerated. Second, Shinault alleges defendants' liability under Section 1983 for the violation of Shinault's rights under the Sixth Amendment in connection with defendants' denying or interfering with Shinault's right to counsel during the contested hearing. Third, Shinault alleges defendants are liable under Section 1983 for violation of Shinault's rights under the Eighth Amendment for not providing Shinault with necessary medications to treat his diabetes after his release from incarceration. Lastly, Shinault alleges defendants' liability under Sections 1985 and 1986 for conspiring to interfere with and/or to violate Shinault's rights under the First, Sixth, Eighth, and Fourteenth Amendments.

Defendants maintain that none of Shinault's constitutional rights have been violated, and Shinault has not presented evidence that defendants conspired to violate his rights. Even if Shinault's constitutional rights have been violated, defendants claim entitlement to qualified immunity. The parties do not appear to dispute the material facts in this case, and largely rely upon the findings of fact presented in the ALJ's Second Amended Proposed Order issued on December 29, 2009. Defendants also rely on the declaration of defendant Dick Hawks, offering as evidence portions of Shinault's inmate trust account statements between January and July 2009, the Ability to Pay Order issued by ODOC on May 29, 2009, as well as Shinault's history of incarceration with ODOC between 1991 and 2009. As stated above, defendants move for summary judgment as to each of Shinault's claims.

Page 7 - FINDINGS AND RECOMMENDATION

I.   **Impaired Access to the Courts**

Shinault contends that defendants denied his right to due process by improperly withdrawing funds from his inmate trust account to pay for his cost of care while incarcerated without giving notice or holding proper court proceedings. Shinault further asserts that the ALJ's order is not appealable to a higher court. In *Bounds v. Smith*, 430 U.S. 817 (1977), the United States Supreme Court affirmed the already well-established proposition that "prisoners have a constitutional right of access to the courts." *Bounds*, 430 U.S. at 821. Indeed, the court noted that, more specifically, prisoners have a right to "adequate, effective, and meaningful" access to the courts, *id.* at 822, and that "the touchstone" of this constitutional right is "[m]eaningful access," *id.*, *quoting Ross v. Moffitt*, 417 U.S. 600, 611, 612, 615 (1974). In *Lewis v. Casey*, 518 U.S. 343 (1996), the court clarified that to establish violation of the First and Fourteenth Amendment right of access to the courts, a prisoner must establish that abridgement of the right of access caused actual injury, namely, actual impairment of the prisoner's capacity to bring or prosecute an action to challenge his or her sentence or the conditions of his or her confinement, whether directly or collaterally. *See Lewis*, 518 U.S. at 355. Impairment of any other litigating capacity is one of incidental consequences of conviction and incarceration, and are perfectly constitutional. *Id.*

An inmate and the personal estate of an inmate are liable for the full cost of care while incarcerated. *See* O.R.S. § 179.701. Any assets received by or owing to the person and the personal estate of the inmate as compensation from the state for injury, death, or false imprisonment of the person are not considered as part of the inmate's personal estate. *See* O.R.S. § 179.640(2)(a). ODOC determines the amount each inmate shall pay and provides actual notice

Page 8 - FINDINGS AND RECOMMENDATION

to the person of its determination by issuing an ability-to-pay order. *See* O.R.S. § 179.640(4). The order states the person's full liability and the person's determined ability to pay. *Id.* The notice includes a copy of the ability-to-pay order, a description of the person's appeal rights, and the dates upon which appeal rights terminate and states the address where a request for hearing may be mailed or delivered. *Id.* Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. *See* O.R.S. § 183.482(1).

In this case, ODOC calculated Shinault's ability to pay based on the proceeds he received from litigation against a drug manufacturing company. Because Shinault did not receive these monies as compensation from the state, ODOC was entitled to include them in its calculations. ODOC issued the Ability to Pay Order on May 29, 2009, and included the Notice to a Right of Hearing, as well as calculations of Shinault's liability and ability to pay. The Notice to a Right of Hearing informed Shinault where his request to a contested hearing must be mailed or delivered, and that it must be postmarked within 60 days of the Ability to Pay Order. Shinault asserts in his complaint that he had no notice of the Ability to Pay Order and did not comprehend that ODOC's notice of withdrawal of funds. Since Shinault exercised his right to a contested case hearing before the ALJ, it is assumed that he received actual notice of the Ability to Pay Order and the Notice to a Right of Contested Hearing. Also, because Shinault requested a hearing on June 2, 2009, it appears that he did comprehend that ODOC was withdrawing funds from his trust account, and was prepared to contest it.

Furthermore, the record does not suggest that Shinault's right to meaningful access was abridged, or that he suffered any actual injury from defendants' withdrawal of funds, because he was able to present his case before an ALJ, who issued an order on December 29, 2009. Since

Page 9 - FINDINGS AND RECOMMENDATION

the record shows that defendants adhered to state law in issuing the Ability to Pay Order, and Shinault exercised his right to a contested hearing before an ALJ, Shinault's claim that defendants deprived him of his constitutional right of meaningful access to courts necessarily fails. Defendants' motion for summary judgment should be granted as to Shinault's Section 1983 claim premised on the violation of his rights under the First and/or Fourteenth Amendments.

## II.     Interference with Right to Counsel at the ALJ Hearing

Shinault asserts that defendants deprived him of his right under the Sixth Amendment to be represented by an attorney, and the right to present his argument aside from requesting a contested hearing before an ALJ. The *Sixth Amendment* provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *U.S. Const. amend VI.* Here, Shinault's hearing before the ALJ was not a criminal prosecution. In an administrative hearing, Oregon law allows parties to "be represented by counsel to respond and present evidence and argument on all issues properly before the presiding officer in the proceeding." O.R.S. § 183.417(1). It is clear from the ALJ's Second Amended Proposed Order that Shinault was given the opportunity to present his argument, because he testified at the hearing from jail. At the hearing, he also had the opportunity to, and did, assert his claim that defendants were "murdering" him by withdrawing funds from his inmate trust account to pay for his incarceration, which would deprive him of the ability to obtain medications to treat his diabetes.

Both Shinault and defendants agree that, in July 2009, Shinault requested ODOC to release $11,000 from his inmate trust account to an attorney that he had retained for the ALJ hearing. However, in September 2009, Shinault's attorney withdrew before the hearing. Under

Page 10 - FINDINGS AND RECOMMENDATION

Oregon law, Shinault was entitled to retain an attorney for his hearing before the ALJ at all times. *See* O.R.S. § 183.417(1). At the time of his release on August 14, 2009, Shinault still had $61,352.39 left in his inmate trust account, showing that he had the financial capacity to retain another attorney to represent him at the contested hearing, which was not held until October 2009. For the foregoing reasons, defendants' motion for summary judgment should be granted as to Shinault's claim for relief under Section 1983 premised on the violation of his rights under the Sixth Amendment.

### III.    Deliberate Indifference to Serious Medical Need

Shinault contends that because defendants were deliberately indifferent to his medical needs by withdrawing funds from his inmate trust account to pay for his cost of care, and not providing medications to treat his diabetes after release from incarceration, they violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Supreme Court has established that a public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) that he suffered an objectively serious illness or injury while incarcerated and (ii) that prison officials were subjectively aware of the seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided. *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002). The objective component is satisfied "whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 904 (internal quotation marks omitted) (*citing McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (*quoting Estelle*,

Page 11 - FINDINGS AND RECOMMENDATION

429 U.S. at 104)).

Under applicable Ninth Circuit case law, "[a] determination of 'deliberate indifference' involves an examination of two elements: [1] the seriousness of the prisoner's medical need and [2] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A finding of "deliberate indifference" necessarily requires "inquiry into a prison official's state of mind." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994), *quoting Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Specifically, the United States Supreme Court has defined "deliberate indifference" in the Eighth Amendment context to mean that "a prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Moreover, under applicable Ninth Circuit jurisprudence, "there are certain [additional] minimum requirements before deliberate indifference can be established." *McGuckin*, 974 F.2d at 1060.

> First, there must be a purposeful act or failure to act on the part of the defendant. "An *accident*, although it may produce added anguish, is not on that basis *alone* to be characterized as wanton infliction of unnecessary pain" sufficient to demonstrate deliberate indifference, [*Estelle*], 429 U.S. at 105 (emphases added), nor does "an *inadvertent* failure to provide adequate medical care" by itself to create a cause of action under § 1983. *Id.* A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.
>
> Second, when, as here, a claim alleges "mere delay of surgery," a prisoner can make "no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (*per curiam*). However, a finding that the defendant's activities

Page 12 - FINDINGS AND RECOMMENDATION

> resulted in "substantial" harm to the prisoner is not necessary, see *Wood*, 900 F.2d at 1339-40; *see also Hudson*, 112 S. Ct. at 998-1000 (rejecting "significant injury" requirement and noting that the Constitution is violated "whether or not significant injury is evident"), although a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional *support* to a claim that the defendant was "deliberately indifferent" to the prisoner's medical needs: the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering. *See* [*Estelle*], 429 U.S. at 106 (holding that a defendant's action or inaction could be "sufficiently harmful to evidence deliberate indifference to serious medical needs"); *Ortiz* [*v. City of Imperial*], 884 F.2d [1312,] 1313-14 (reversing summary judgment in part because inaction of doctors and nurses resulted in inmate's death).

*Id.* (emphasis original; footnote omitted). Nevertheless, "[t]he requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *Id.*, *quoting Hudson*, 503 U.S. at 6, *citing Whitley v. Albers*, 475 U.S. 312, 320 (1986).

Under Oregon law, an inmate and the personal estate of an inmate are liable for the full cost of care. *See* O.R.S. § 179.701. When determining an inmate's ability to pay, in addition to other relevant factors, ODOC will consider the inmate's personal estate, the inmate's need for funds for personal support after release, and the availability of third party benefits such as, but not limited to, Medicare or private insurance. *See* O.A.R. 291-203-0040(5). If collection of an inmate's cost of care would be detrimental to the best interests of the person or agency, the agency may waive collection of part or all of the amount otherwise payable. *See* O.R.S. § 179.731.

Here, Shinault asserts that ODOC's deprivation of funds amounts to cruel and unusual

Page 13 - FINDINGS AND RECOMMENDATION

punishment. However, ODOC's withdrawal from Shinault's inmate trust account was intended to reimburse the State of Oregon for the cost of his incarceration, not to punish him. Although Shinault requested that ODOC waive the cost of his incarceration, he did not provide evidence prior to his release or at the contested hearing as to any specific medical needs or the projected cost of those needs. Indeed, in both his complaint and motion in opposition to summary judgment submitted to this court, Shinault still has not provided evidence of any specific medical needs or projected costs of those needs, only asserting that the withdrawal of funds from his inmate trust account would lead to his inability to pay for medications associated with diabetes.

Shinault also maintains that defendants refused to provide him with medications to treat his diabetes after being released from incarceration. However, the ALJ found that at the time of his release on August 14, 2009, ODOC gave Shinault a 60-day prescription to both medications necessary to treat his diabetes. The ALJ also noted that Shinault was arrested on October 10, released from jail on October 19, and re-arrested on October 21, 2009. Since Shinault is currently incarcerated at the Marion County Jail, the jail or any other institution holding him will continue to provide him with the necessary medications and medical care.

At the contested hearing, Shinault did not provide evidence that he would be unable to work once he was released from incarceration. The ALJ found that Shinault's medical costs and medications could be covered by medical insurance through his employment. Even if Shinault's medication costs were not covered through work or any other third-party provider, the Oregon Health Plan remained an option for him. In his complaint and motion in opposition to summary judgment, Shinault still has not provided evidence that he would be unable to work once he is released from incarceration. Therefore, given that Shinault's medications and medical costs will

Page 14 - FINDINGS AND RECOMMENDATION

continue to be covered by Marion County Jail or any other institution holding him while he remains incarcerated, and that medical insurance through future employment or the Oregon Health plan remain viable options to pay for his medical care once he is released, Shinault's assertion that defendants' withdrawing funds from his inmate trust account amounts to "deliberate indifference" to his medical needs are unfounded. Indeed, defendants have adhered to ODOC policy and state law and responded to Shinault's medical needs by providing him with a 60-day supply of medications to treat his diabetes after release from incarceration in August 2009, as well as continuing to provide medications and medical care to him while he remains incarcerated. For the foregoing reasons, defendants' motion for summary judgment should be granted as to Shinault's Section 1983 claim premised on the violation of his rights under the Eighth Amendment.

## IV.     Conspiracy to Interfere with Civil Rights

Shinault asserts that defendants are liable under Sections 1985 and 1986 for conspiring to interfere with and/or to violate his civil rights under the First, Sixth, Eighth, and Fourteenth Amendments. Other than claiming that defendants held proceedings or meetings without Shinault present, he does not allege any facts or provide any evidence – either direct or circumstantial – that defendants intended to obstruct justice, interfere with Shinault's civil rights, or engage in race discrimination. The record shows that the only proceeding held with respect to Shinault was the administrative hearing on October 23, 2009. No other evidence provides that defendants conspired to abridge any of Shinault's constitutional rights. Therefore, defendants' motion for summary judgment should be granted as to Shinault's Sections 1985 and 1986 claims premised on the violation of his civil rights.

## V. Qualified Immunity

Having found no constitutional violation, there is no need to address defendants' qualified immunity defenses.

## CONCLUSION

For the reasons set forth above, defendants' motion (#27) for summary judgment should be granted, and Shinault's claims in this action should be dismissed with prejudice. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 11th day of June, 2012.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION